## Charles Valentine *versus* Nathan Brown.

Where the owner of a large number of barrels of beef, all of equal value and all in one parcel, sold a certain number of them to the plaintiff and received the price, and a certain number to B., and reserved the rest for himself, and delivered them all to the agent of the vendees, and afterwards B. took away the number sold to him, and the vendor took away the number reserved, it was *held*, that upon such separation the barrels remaining in the hands of such agent became vested in the plaintiff, and that he might consequently maintain trover therefor against a person who took away and converted the same.

Trover for twelve barrels and fifty half-barrels of beef. Trial before *Putnam* J.

It appeared that the defendant, who was a deputy sheriff, attached the beef on the 14th of April, 1834, on a writ against Samuel Titcomb, and sold it.

The plaintiff offered in evidence a receipted bill of sale of the beef to himself from Titcomb, dated November 29th, 1833 ; and an accountable receipt, dated November 28th,

1833, signed by Titcomb, certifying that he had in his posses-sion twenty-six barrels and fifty half-barrels of beef, which he promised to deliver to the plaintiff or his order, free of ex-pense, in five months, fire excepted, or to pay him therefor, at certain rates, and that such beef was stored in a cellar therein specified.

The plaintiff called S. W. Marston, Esq. as a witness, who testified, that on the 25th of November, 1833, he received a bill of sale from Titcomb to B. Burgess & Son, of one hun-dred barrels of beef, which were to be held as collateral secu-rity for the payment of a debt due to them from Titcomb, which had been left with the witness for collection ; that Tit-comb gave him the key of the cellar where the beef was stor-ed, in order that he might hold the beef as such security ; that he afterwards received a letter from the plaintiff, dated the 5th of December, 1833, containing the following words : " En-closed you have a certificate and a copy of a bill of beef bought of Samuel Titcomb. Whenever this will bring cost, cash, I wish it sold, or let Mr. Titcomb have it by paying cash ; this is the understanding. The beef is stored with the lot you have possession of, for Benjamin Burgess & Son. I wish you to keep the beef in your possession until cash is received for it ;" that Titcomb, upon being informed that the plaintiff had requested the witness to take possession of the beef sold to the plaintiff, told the witness he might take possession of it for the plaintiff and dispose of it as the witness pleased ; that the wit ness then held the key, with Titcomb's knowledge, for the purpose of keeping possession for Burgess & Son and for the plaintiff; that immediately after thus taking possession for the plaintiff, the witness went to the person having charge of the cellar, to hire the storage of the beef sold to the plaintiff, and did hire the storage accordingly, and such person charged and the witness paid for the storage up to the time when the beef was attached by the defendant ; that the debt due to Bur-gess & Son not having been paid, one hundred barrels of beef were, on the the 28th of January, 1834, at their request, taken out of the cellar for them and deposited in another place ; that the witness took such barrels as he pleased for Burgess & Son, and that Titcomb did not assist him, but assented to his so

taking them ; that after the beef of Burgess & Son was remov-
ed, Titcomb applied to the witness for the key of the cellar,
saying that he had beef there, other than that which he had
sold to the plaintiff, and which he wished to sell ; that the wit-
ness lent him the key accordingly, and it was returned to the
witness, and he held it at the time of the attachment ; that the
witness, having heard of the attachment, went with the defend-
ant to the cellar and found there all the beef which was attach-
ed, but fourteen barrels were missing ; that the beef was branded
with the Boston inspection mark ; that there was no separation
of the barrels sold to the plaintiff, or to Burgess & Son, and
that the witness never understood that any thing more was to
be done by Titcomb, to convey the beef to the plaintiff, by
weighing or separating or selecting ; and that there were be-
tween one and two hundred barrels of beef more than the num-
ber sold to Burgess & Son.

Another witness, a dealer in beef, testified, that a purchaser
has no motive for selecting one barrel of the beef so branded,
rather than another.

Judgment was to be rendered for the plaintiff, if the Court
should be of opinion that the evidence was sufficient to sustain
a verdict in his favor.

*Cushing*, for the defendant, to the point, that the plaintiff
had not so separated and individualized his portion of the beef
as to enable nim to maintain this action, cited Saunders on Pl.
& Evid. 873 ; *Young* v. *Austin*, 6 Pick. 283 ; *Busk* v. *Da-
vis*, 2 Maule & Selw. 397 ; *Shepley* v. *Davis*, 5 Taunt. 617 ;
*M'Donald* v. *Hewett*, 15 Johns. R. 349 ; 2 Kent's Comm.
(2d ed.) 496 ; *Barrett* v. *Goddard*, 3 Mason, 111.

*Choate*, for the plaintiff, cited *Macomber* v. *Parker*, 13
Pick. 175 ; *Young* v. *Austin*, 6 Pick. 280 ; *Damon* v. *Os-
born*, 1 Pick. 476 ; Brown on Sales, 391 ; 2 Kent's Comm.
(1st ed.) 393 ; *Ryall* v. *Rolle*, 1 Atk. 171.

SHAW C. J. delivered the opinion of the Court. The main
question in the present case is, whether the plaintiff had ac-
quired such a title in the beef described, as to enable him to
maintain an action of trover. The circumstances of the case
are somewhat peculiar, and upon those circumstances we are
of opinion, that the plaintiff has made a legal title.

*Valentine
v.
Brown.*

*Nov. 8th.*

*Nov 10th*

In the first place, there was a good contract of sale, made upon good consideration and without fraud. The vendor had the quantity at the time, corresponding in description with that sold, but mingled with a larger parcel. The bill of sale on the face of it, purports a delivery; but, perhaps, taken in connexion with the receipt admitted to have been given by Titcomb at the same time, it may be inferred, that no constructive or other delivery was made. But as the price was paid at the time, the vendor had no lien for the price, and no other right of possession; and, therefore, the right of possession followed the right of property, and nothing remained to make the property complete, but an actual or constructive delivery and a separation of the part sold, from the mass. The provision, that Titcomb would keep these barrels of beef, five months without expense, and then deliver or pay for them, was a stipulation for the benefit of the plaintiff, and did not prevent him from demanding possession sooner. But if it were otherwise, and if Titcomb had any right to retain possession, he waived it by giving up the possession to the plaintiff's agent. When, therefore, Titcomb, upon the plaintiff's request, delivered the larger parcel to the plaintiff's agent, upon a demand of the plaintiff's goods, it constituted a good constructive delivery; nothing remained but to separate the number of barrels belonging to each, they being all of equal value, in order to enable the plaintiff to have the specific barrels intended to be sold. And this delivery of the larger parcel, upon this demand and for this purpose, gave the authority to the plaintiff or his agent to make such separation. Whilst they so remained in the plaintiff's custody, the other purchaser, to wit, Burgess & Son, took their one hundred barrels, with the consent of the other parties, and Titcomb took what he claimed, and those which were left were thus effectually separated and remained as the plaintiff's under the contract. He then acquired a complete property in the specific and individual barrels and half-barrels, for which the action was brought. It is found that by some means enough were not left for him; but this does not impair his right, to those which were left. If 500 bushels of corn be sold out of a larger parcel, say 1,000 bushels, and the vendor receives storage until the vendee shall have the part purchased sepa

rated, if the vendor sells the other 500 to another purchaser, and it is measured and delivered, the vendor holding the 500 on storage for the first purchaser, this is as effectual a separation to vest the specific 500 bushels in the first purchaser, as if the 500 had been first measured and delivered to the first purchaser ; it being understood, however, that in all other respects there had been enough done, to vest the property and right of possession in the vendee, by a contract of sale, a payment of the price, and a constructive delivery.

Such separation having been effected in the present case, in the events which have happened, before the attachment made by the defendant, we are of opinion, that the plaintiff had the complete property and right of possession in the goods attached, and that he may, therefore, maintain this action.